## DAVID J. PIERCE *vs.* CHARTER OAK LIFE INSURANCE COMPANY.

Norfolk.    March 13. — Nov. 1, 1884.    DEVENS & COLBURN, JJ., absent.

If a declaration on a policy of life insurance refers to the policy without annexing a copy, and does not set up any contract inconsistent with the policy, an objection, taken when the policy is offered in evidence, that there is a variance between the policy and the declaration, cannot be maintained.

If a declaration on a policy of life insurance, which refers to the policy, is not demurred to, it is no ground of exception to the admission of the policy in evidence, that the declaration construed in connection with the policy is ambiguous.

A declaration on a policy of life insurance need not allege facts which defeat a part of the plaintiff's claim under special provisions of the policy.

A policy of life insurance on the life of A. was payable on his death to his wife and children, and their assigns; and, if he survived a certain day, was payable to him. *Held,* that he had an assignable interest in the policy.

A policy of life insurance provided that, if assigned, written notice should be given to the insurer. An assignment was made, notice was given, and the insurer acknowledged notice thereof. *Held,* that this did not amount to a promise, on the part of the insurer, to pay the assignee; and that he could not maintain an action on the policy in his own name.

A policy of insurance, in consideration of the payment of an annual premium, insured the life of A. in a certain sum, "or after the due payment of premium for two or more years, if default shall be made in the payment of any subsequent premium, for as many tenth parts of the original sum insured as there shall have been complete annual premiums paid." In the margin of the policy were words and figures denoting that one half the annual premium was payable in cash, and one half by note. *Held,* that these words and figures formed part of the policy, and that, if annual premiums were paid one half in cash and one half by note, "complete annual premiums" were paid.

In an action at law on a policy of life insurance payable at a day named in the policy, evidence is inadmissible, in defence, to show that a different day should have been written.

In an action on a policy of life insurance, payable if the person whose life is insured survives a certain day, the plaintiff can recover interest only from the date of the writ, unless in his declaration he alleges a demand before that time.

If a policy of life insurance is payable ninety days after due notice and satisfactory evidence of the death of the person whose life is insured, or, if he survives a certain day, is then payable to him, the ninety-days clause has no application to the latter contingency, and interest is not payable except as damages for wrongfully withholding the money.

In an action on a policy of life insurance, payable if the person whose life was insured survived a certain day, brought by an assignee in his own name, in the Superior Court, that court ordered a verdict for the plaintiff, with interest from the day the policy was payable; and allowed a bill of exceptions, which showed that the insurer had made no contract with the assignee, and that the declaration did not allege any demand. *Held,* that the exceptions must be

sustained, unless the plaintiff was allowed by the Superior Court to amend by substituting for his own name that of his assignor, as plaintiff, and would remit interest prior to the date of his writ.

CONTRACT. Writ dated September 9, 1882. The declaration was as follows :

" And the plaintiff says that the defendant corporation made a policy of insurance upon the life of Alanson K. Josselyn, numbered 28,884, and bearing date November 8, 1867, for the sum of five thousand dollars, the original of which policy the plaintiff craves leave to refer to and make part of this his declaration, and to bring the same into court, whereby and wherein [for] the consideration of a certain premium therein named to be paid for a period therein named to the said company, it agreed to pay or cause to be paid the said sum insured to the said assured, his executors, administrators, or assigns, ninety days after due notice and satisfactory evidence of the just claim of the assured, or proof of interest if assigned or held as security under said policy, has been received and approved by the company.

" And the plaintiff further says that the premiums named in said policy were paid said company according to the terms of said policy ; that further, under the terms of said policy, the said company agreed, upon proof of interest of any person to whom said policy is assigned, to pay any just claim of the assured to such assignee ; that said policy, with any and all claims of said Josselyn therein, was assigned to the plaintiff, as appears by the paper, a copy of which is hereto annexed, marked ' A,' and the same was duly accepted by said company, as appears by the writing, a copy of which is hereto annexed, marked ' B,' and the same has been received and approved by said company.

" And so the plaintiff says the defendant owes him the said sum of five thousand dollars, and interest thereon, from November 8, 1877, ninety days after due notice having elapsed, and satisfactory evidence of the just claim of the assured, and of the assignment to the plaintiff having been made."

The paper referred to as marked " A " purported to be signed by Alanson K. Josselyn and Sarah N. Josselyn, and was as follows : " Indianapolis, Indiana, June 10, 1873. We, Alanson K. Josselyn and Sarah N. Josselyn, hereby assign all our interest in the within policy of insurance to David J. Pierce of Weymouth,

Mass., as collateral security for the payment of two certain promissory notes given by said A. K. Josselyn to said D. J. Pierce, both bearing date of June 10, 1873, one for $1291.26, falling due October 10, 1873; the other note for $1500, falling due September 10, 1873; upon the payment of the above notes and interest, this policy of insurance to be returned to said Alanson K. Josselyn."

The paper referred to as marked " B "purported to be signed by W. L. Squire, Assistant Secretary, and was as follows: " Hartford, July 6, 1874. The Charter Oak Life Insurance Company hereby acknowledge notice of the foregoing assignment, subject to the conditions and restrictions of said policy."

The answer contained a general denial, and a denial that any entire premium had been paid to the defendant under the policy declared on; alleged that certain promissory notes of A. K. Josselyn had been given to the defendant for portions of said premiums, as follows: 1. A note for $535, dated November 8, 1870, and payable twelve months after date. 2. A note for $141, dated November 8, 1871, and payable twelve months after date. 3. A note for $135, dated November 8, 1872, payable twelve months after date. All of these notes were payable to the order of the defendant, with interest at six per cent.* The answer further alleged that, if any sum was due the plaintiff on the policy, the amount of the notes and interest was to be deducted therefrom. The remaining averments of the answer were as follows:

" And, further answering, defendant says that it is not apprised by the declaration as to the substance and language of the policy sued on, and prays that plaintiff be required forthwith to file a copy thereof in court. And, further answering, defendant denies that said policy was ever legally assigned to the plaintiff, and denies that by its terms and by the rules of law it could be assigned to him in manner to maintain the action. And it says

---

* It appeared from copies of these notes annexed to the answer, that the amount of the first note was determined by adding the " amount of notes of former years " to $281, " regular note, part of premium for this year," and deducting the return premium for the year ending April 1, 1870; and the amounts of the other two notes were determined by deducting in each case the return premium from $281, " regular note, part of premium."

that it has been notified by said A. K. Josselyn that said assignment was void, and that no sums of money were due the plaintiff thereunder, and forbidden to pay the plaintiff any sum therefor."

Trial in the Superior Court, without a jury, before *Mason*, J., who allowed a bill of exceptions, which, after stating that the pleadings formed part thereof, was in substance as follows:

Neither the policy nor a copy thereof was filed in court before the trial; and no motion, prior to the trial, was made by the defendant for the filing of the policy, the only reference to it being in the answer. The plaintiff offered in evidence a policy of insurance, and was allowed to read the same, including the endowment clause. The defendant objected on the following grounds: "1. The endowment clause is not declared on 2. There is a variance between the policy read and the decla ration in that particular." The material clauses of the policy No. 28,884, (countersigned by "A. N. Elliott, Agent,") a copy of which was annexed to the bill of exceptions, were as follows:

"This policy of insurance witnesseth, that the Charter Oak Life Insurance Company, in consideration of the representation made to them in the application for this policy, and of the sum of five hundred and sixty-two and $\frac{50}{100}$ dollars, to them in hand paid by Sarah N. Josselyn, and the children of Alanson K Josselyn, and of the annual premium of five hundred and sixty two and $\frac{50}{100}$ dollars, to be paid on or before the eighth day of November, in every year, for the term of ten years, do assure the life of Alanson K. Josselyn of Barre, in the county of Wor cester, State of Massachusetts, in the amount of five thousand dollars, or after the due payment of premium for two or more years, if default shall be made in the payment of any subsequent premium, for as many tenth parts of the original sum insured as there shall have been complete annual premiums paid, and such policy shall not be subject to further payment of premiums.

"And the said company do hereby promise and agree to and with the said assured, their executors, administrators, and assigns, well and truly to pay, or cause to be paid, the said sum insured to the said assured, their executors, administrators, or assigns, ninety days after due notice and satisfactory evidence of the death of the said Alanson K. Josselyn, and of the just claim of the assured (or proof of interest if assigned or held as security)

under this policy, has been received and approved by the company, or if the said A. K. Josselyn shall survive until the eighth day of November, 1877, then the said amount insured shall be paid to him, deducting therefrom the amount of all unpaid notes given for premium, or loans by them on this policy, and all deferred premiums, if any, then existing.

" In case the said assured shall not pay the said premiums on or before the several days hereinbefore mentioned for the payment thereof, then and in every such case the said company shall not be liable to the payment of the sum insured, or any part thereof, except the *pro rata* as above recited; and this policy shall cease and determine.

" And it is further agreed, that in every case where this policy shall cease, or be or become null or void, all payments made thereon shall be forfeited to the said company, and that, if assigned, written notice shall be given to said company."

In the margin of the policy were the following words and figures : " Plan, with profits.   Annual premium, $562.50.   Payable : $281, note; $281.50, cash; each 12 months from Nov. 8, 1867.   Sum insured, $5000.   Endowment.   Life of another."

The plaintiff was allowed to show, from the records of the insurance commissioner of this State, that a certificate as agent for the defendant corporation was issued in 1867 to A. N. Elliott of Barre, Massachusetts, by the commissioner, with a memorandum in pencil in the margin, that a certificate was sent to Elliott by mail; and the defendant excepted.

The plaintiff testified, in his own behalf, that in 1874 he wrote a letter, and sent it through the mail to the Charter Oak Life Insurance Company at Hartford, and received by mail a letter dated December 14, 1874, signed " W. L. Squire, A. Sec'y." This letter, which contained an admission that the defendant had received payment of six annual premiums on the policy in suit, was admitted in evidence, against the defendant's objection. It afterward appeared from the testimony of one of the defendant's witnesses, that the letter was signed by said Squire, who was the assistant secretary of the company, and had charge of all correspondence relating to policies.

By the terms of the policy, one half of the premium was to be paid in cash, and a note given each year for the other half.

Payments were made, and notes given by Josselyn, for six years, the last one being in 1872, and the company still holds notes, copies of which are attached to the defendant's answer, which notes, principal and interest, are due and unpaid, and no further premium has been paid by any one.

In June, 1873, Josselyn was indebted to Pierce upon two notes, and gave the assignment to him, of which a copy is annexed to the declaration, as security therefor.   The plaintiff testified that these notes had not been paid, and that $2700 remained due on them ; that several letters passed between him and the defendant respecting the policy, and that, in 1877, the defendant addressed a circular to him speaking of his policy, No. 28,884, which would be due November 8, 1879, and asking him to scale the same to sixty per cent of its face, as other policy holders were doing ; to which letter he made no reply ; that in October, 1879, he went to Hartford and made a demand upon the defendant for the payment of the policy, and from time to time thereafter made requests and demands for payment; and that the defendant objected at these various times, that it was under an injunction from the state court preventing the paying of any loss, that he ought to scale the policy to sixty per cent of its face, as others had done, that it had been notified by Josselyn not to pay to him, as nothing was due him on these notes, and that he must get some additional release from Josselyn.

The plaintiff further testified, that in 1877 he wrote to the defendant in regard to the policy, about the time that it became due according to its terms, and received the following letter, dated November 13, 1877, and signed by W. L. Squire, Assistant Secretary :

"D. J. Pierce, Esq., Weymouth, Mass.   Dear Sir: In reply to yours of the 29th ult., would say that policy No. 28,884 is a ten-year endowment, maturing Nov. 8, 1879, six annual premiums having been paid.   We hold premium notes against the policy for $811.   We are submitting to our policy holders of a reduction of 40 per cent. of their policies, this being a necessary step in order to keep the company from the hands of a receiver, and enable us to meet any portion of our maturing liabilities.    Please find herewith agreements to be executed under your policy, No. 28,884.   They should be signed by Mr.

and Mrs. J., and by you as assignee.    One copy should be returned to the company.    We can assure you that, if the policy holders accept this proposition, the company will be put upon such a basis that it will be able to meet the reduced amount of your claim under this policy.    If the policy holders do not accept it, then the company will be closed by a receiver, and the amount which will be returned to you would be reduced very much below what we ask you now to reduce it, and the payment will be made at an indefinite time in the future.    We desire to hear from you at as early a date as may be convenient."

The plaintiff further testified that after November 13, 1877, the defendant sent him agreements in writing to be signed and executed by him agreeing to the scaling of the policy; that he had frequent interviews with the defendant, and that the only differences between himself and it were, that, while he contended that the policy became due in 1877, the defendant contended that it became due in 1879, and that he declined to scale his policy; that a bill in equity was brought by Josselyn to prevent the defendant from paying the policy to him, which bill was ultimately dismissed; that, in all the interviews and correspondence, the defendant, except as above stated, never suggested that his interest was not satisfactorily presented, or that he had not made to its satisfaction proof of a just claim, but on the contrary he had been frequently told by the defendant's agents and officers that his policy would be paid if he would scale it to sixty per cent of the amount due; and that, shortly before the bringing of this suit, the defendant made offers of settlement to him.

In July, 1882, he obtained a release from Josselyn, and sometime before September 2, 1882, he presented it to the company, and demanded payment.

There was no other evidence of any proof of "just claim," or "proof of interest" in the assignee.

The defendant offered evidence to show that the rate charged on this policy was $112.50 per thousand, which is the rate on endowment policies, premiums payable in ten years, and endowment payable in twelve years; that the rate is $116.50, where the endowment is payable in ten years; and that the date of payment in the endowment clause, November 8, 1877, was a clerical error for 1879.    This evidence was rejected.

The defendant offered in evidence a letter written by Josselyn, August 28th, 1879, notifying the defendant that nothing was due to Pierce under the assignment to him, and not to pay the policy to him. The judge rejected the evidence.

The defendant requested the judge to rule as follows:

"1. The plaintiff is not entitled to recover under this declaration. 2. The suit cannot be maintained on this declaration for the following reasons: The declaration sets up only a contract on the life of Josselyn, and it does not appear that he was dead when suit was brought. It does not set up any agreement to pay tenth parts, or state the number of premiums paid. It contains no allegation of proof of interest in the assignee. It does not follow the provisions of the Public Statutes for declaring on policies of insurance. There is a variance between the declaration and the policy introduced. 3. The suit cannot be maintained in the name of this plaintiff, as assignee of the policy, or otherwise. 4. The plaintiff cannot recover as the assignee of A. K. Josselyn. 5. There is no evidence of proof of interest in the assignee of the policy. 6. There is no evidence that more than three complete annual premiums have been paid. 7. The plaintiff is entitled to recover, if at all, only for as many tenth parts of $5,000 as Josselyn has paid complete annual premiums in cash, less the amount of the outstanding notes. 8. Interest cannot be recovered under this declaration. 9. The plaintiff is entitled to recover interest, if at all, only from the time at which he shows that he gave the company proof of his interest in the policy."

The judge refused all these requests for rulings, except the 9th, giving the 7th with the modification that, under the terms of the policy, the notes should be received, and taken as part payment of the annual premiums, and found for the plaintiff in the sum of $2654.49, being six tenths of the amount of the policy, with interest from November 8, 1877, less the outstanding notes and interest on them to that date. The defendant alleged exceptions.

*S. J. Elder*, for the defendant.

*E. Avery*, for the plaintiff.

FIELD, J. The declaration considered apart from the policy is unintelligible. It does not allege that Alanson K. Josselyn

has died, or that anything has happened whereby, by the terms of the policy, any sum of money has become payable. But the defendant did not demur to it, or move the court before the trial that a copy of the policy be filed, or that the particular breach in the contract on which the plaintiff relied be specified. There cannot be said to be a variance between the policy put in evidence and the declaration, because the declaration refers to the policy, and does not set out any contract inconsistent with it. The objection really is, that the declaration does not definitely describe the policy or the legal effect of it, or allege any breach of any obligation of the defendant under it. As the defendant answered this declaration without demurring to it, if the presiding justice chose to permit the plaintiff to proceed with the trial after producing the policy, an exception does not lie to the admission of the policy in evidence, on the ground that the declaration, as construed in connection with the policy, is ambiguous, and does not distinguish between an indebtedness on the promise to pay Josselyn's wife and children the sum insured if Josselyn died before November 8, 1877, and an indebtedness on the promise to pay Josselyn, if he survived until that day. Josselyn did survive and was alive at the trial. It was in the power of the court, undoubtedly, to compel the plaintiff to set out distinctly his cause of action, even if the defendant had not demurred to the declaration, but the defendant did not invoke the exercise of this power by the court.

The evidence showed that only a part of the premiums had been paid, and that by the policy only a part of the sum insured was payable, and tended to prove a case under special provisions of the policy to which there was no reference in the declaration.

The Pub. Sts. *c.* 167, § 2, *cl.* 9, requiring written instruments to be declared on by "setting out a copy or such part as is relied on, or the legal effect thereof," except policies of insurance. Of the two forms of declarations on policies of insurance annexed to this chapter in the statutes, one assumes that a copy of the policy is annexed to the declaration, and the other that it is not.

The reason for excepting policies of insurance in the statute was, probably, that they are often of great length, and contain a multitude of provisions and conditions that may have no bearing on the particular case, and it was thought to be sufficient if

the plaintiff stated the substantive facts on which he relied, and alleged that the defendant was thereby bound, by the terms of the policy, to pay him the sum sued for. The statute in this respect followed the old rules of court. 24 Pick. 406.

It was not necessary that the plaintiff should allege in his declaration the facts that defeated a part of his claim under special provisions of the policy.

The exceptions to the admission of the record of the insurance commissioner, and of the letter of December 14, 1874, received from the assistant secretary of the company, were waived at the argument; and the exception to the admission of the letter from the assistant secretary of November 13, 1877, has not been pressed, and is untenable.

By the policy, if Alanson K. Josselyn "shall survive until the eighth day of November, 1877, then the said amount insured shall be paid to him, deducting therefrom the amount of all unpaid notes given for premiums or loans by them on this policy, and all deferred premiums, if any, then existing." This interest in the policy Alanson K. Josselyn could assign, and did assign to the plaintiff, as collateral security for the payment of two promissory notes given by him. That his wife joined with him in the assignment does not detract from the effect of his assignment; and it is not necessary to consider what would have been the effect of her assignment if her husband had died before November 8, 1877.

But the plaintiff cannot maintain this action in his own name, unless the defendant has expressly or impliedly promised to pay him as assignee. *Grant* v. *Wood*, 12 Gray, 220. *Burrows* v. *Glover*, 106 Mass. 324. *Tate* v. *Citizens' Ins. Co.* 13 Gray, 79. The policy provides " that, if assigned, written notice shall be given to said company." Such notice was given, and the company, in writing, on July 6, 1874, " hereby acknowledge notice of the foregoing assignment subject to the conditions and restrictions of said policy." This is not a promise to pay the plaintiff as assignee. In July, 1874, it could not be known whether Alanson K. Josselyn would live until November 8, 1877, and if he died before that day, the sum insured was payable, on his death, to his wife and children. If he left children, the wife alone could not assign the whole sum insured. The company

might well decline to do more than acknowledge notice of the assignment. A promise to pay the sum insured to the assignee might create obligations inconsistent with the original contract, and is not to be inferred from the mere acknowledgment of notice of the assignment.

If A. K. Josselyn lived until November 8, 1877, he was the proper person to sue for the sum insured. The policy was not under seal. *Flynn* v. *North American Ins. Co.* 115 Mass. 449. *Brigham* v. *Home Ins. Co.* 131 Mass. 319. The insurance was on his life; the promise was to pay him; and in fact he was not a stranger to the consideration, for although the policy recites a payment of an annual premium by his wife and children, the exceptions state that the premium for the six years in money and notes was actually paid by him. If the declaration alleges any promise by the defendant to pay the plaintiff the sum insured, it must be inferred from the allegations made of the assignment, and of the written acknowledgment of notice of it by the company. We think this is not in effect an allegation of a promise to pay the plaintiff, as we have held that the written acknowledgment did not amount to such a promise.

There was evidence of the assignment of the policy to the plaintiff as collateral security for the payment of two notes given by A. K. Josselyn, on which $2700 remained due, at the time of the trial. This is a good, existing assignment as between Josselyn and the plaintiff, and would enable the plaintiff to maintain a suit in Josselyn's name.

The next objection is, that there is no evidence that more than three complete annual premiums have been paid. The policy provides that the company "assure the life of Alanson K. Josselyn . . . . in the amount of five thousand dollars or after the due payment of premium for two or more years, if default shall be made in the payment of any subsequent premium, for as many tenth parts of the original sum insured as there shall have been complete annual premiums paid." The policy contains in the margin the following words and figures: "Annual premium $562.50; Payable $281 note, $281.50 cash, each 12 months from Nov. 8, 1867." The letter of the assistant secretary, of December 14, 1874, acknowledges that premiums have been paid up to November 8, 1873. The exceptions state that, "By the

terms of the policy, one half of the premium was to be paid in cash and a note given each year for the other half. Payments were made, and notes given by Josselyn, for six years, the last one being in 1872; and the company still holds notes, copies of which are attached to the defendant's answer, which notes, principal and interest, are due and unpaid, and no further premium has been paid by any one."

The notes held by the company are payable in twelve months after date, with interest, and are respectively for $535, $141, and $135, and dated November 8, 1870, November 8, 1871, and November 8, 1872. The policy is dated November 8, 1867. It is plain that the cash paid was more than the whole amount of premiums for two years, even if the construction to be given to the words "after the due payment of premium for two or more years," found in the clause we have cited, requires that the payment be made in money. We think, however, that this is not the true construction, but that these words, as well as the words "complete annual premiums paid," found in the same clause, mean, that the payment of premiums shall be made according to the terms of the policy; that the words in the margin which have been cited are a part of the policy, and that by the contract the annual premium is to be paid $281 by note, and $281.50 in cash, and that, on the evidence, it was competent for the court to find that six complete annual premiums had been paid, and that six tenths of the sum insured were payable, less the outstanding notes. The company is protected by the provision in the policy, that from the amount insured there shall be deducted "the amount of all unpaid notes given for premium or loans by them on the policy, and on deferred premiums, if any, then existing."

The evidence offered by the defendant for the purpose of reforming the policy by substituting 1879 for 1877, as the time when, if Josselyn survived, the sum insured became payable to him, was rightly rejected. Written contracts cannot be reformed in actions at law by oral evidence of clerical mistakes.

The defendant contends that the letter written by Josselyn on August 28, 1879, notifying the company not to pay the policy to the plaintiff, was improperly rejected, because, it is said, it was competent upon the question of interest. It is not necessary to

decide this.   By the policy, as we construe it, if A. K. Josselyn survived until November 8, 1877, the amount insured became payable to him immediately.  If the plaintiff, as Josselyn's assignee, contended that the sum should be paid to him, he must exhibit some evidence of his right under the assignment to receive it; and it is contended that evidence that Josselyn denied his right to receive it was evidence that the company in neglecting to pay was not unjustly withholding the money due, because there were conflicting claims.   Interest is not payable by the terms of the contract.   As the sum insured was payable to Josselyn only on the contingency that he survived until November 8, 1877, and even then it is not made expressly payable on that day, and as the sum payable was not a sum certain, but depended upon the payment of the annual premiums, and was subject to deductions, we think that interest is not recoverable, as matter of law, if the sum is not paid on that day.   It is only recoverable as damages for unlawfully withholding the money.

It was therefore in this case necessary to allege and prove a demand, or other facts from which an obligation to pay interest arises, in order to recover interest before the date of the writ. The company was entitled to proof that Josselyn survived until November 8, 1877, before it can be said to have unjustly withheld the money from him or his assignee.   The declaration is as unsatisfactory in its allegations concerning interest as in every other respect.   It alleges that the defendant agreed to pay or cause to be paid the said sum insured "ninety days after due notice and satisfactory evidence of the just claim of the assured, or proof of interest if assigned," &c., "has been received and approved by the company," and that the defendant owes the plaintiff "the said sum of five thousand dollars and interest thereon from November 8, 1877, ninety days after due notice having elapsed, and satisfactory evidence of the just claim of the assured, and of the assignment to plaintiff, having been made."   The provision in the policy for ninety days' due notice and satisfactory evidence of the death of Josselyn, and of the just claim of the assured, have no application if he survived until November 8, 1877, and the sum insured became payable to him.   By the assured in the policy are meant Josselyn's wife and children.

Evidence appears that, in October, 1879, the plaintiff demanded payment, and that the defendant objected to paying, on the ground, among others, that it then was under an injunction from some court restraining it from paying any loss. It is unnecessary to attempt to state all the principles which govern the liabilities of a stakeholder to pay interest as damages for not paying money which two or more persons claim adversely, or while enjoined from paying it by a court. The presiding justice has allowed interest from November 8, 1877. Whether he allowed this on the ground that, as matter of law, the sum payable drew interest from that time as a sum absolutely payable on a fixed day, or from finding that there was a demand on that day, we do not know. He could not, however, as we have held, do this unless there was a demand on that day, and no evidence of this is recited. The defendant requested a ruling that " interest cannot be recovered under this declaration," which was refused. We think that this request must mean that interest could not be recovered under the declaration before the date of the writ. This request should have been given unless the declaration either alleges that a demand was made by Josselyn or the plaintiff for the payment of the sum insured at some time after it became payable, and before suit brought, or alleges other facts from which an obligation to pay interest arises. *Ordway* v. *Colcord*, 14 Allen, 59. We think that the declaration does not, with reasonable certainty, allege any such demand, or any such facts. This exception is therefore sustained.

But the plaintiff may apply to the Superior Court for leave to remit the interest from November 8, 1877, to the date of the writ, and to amend his writ by substituting for himself as plaintiff the name of Alanson K. Josselyn, as nominal plaintiff; and, if this is allowed by that court, with or without terms, as that court may order, judgment may then be entered on the finding for the amount remaining after the remission; otherwise, the entry must be                    *Exceptions sustained.*