**GULF THEATRES, INC., a Corporation of the State of Delaware, v. GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, a Corporation of the State of New York.**

26 So. (2nd) 188

May 21, 1946

January Term, 1946

Division A

*Hardee & Bucklew,* for appellant.

*Edward E. Fleming, Fowler & White* and *Albert B. Bernstein,* for appellee.

BUFORD, J.:

Appellant filed in the court below its amended bill of complaint in which it alleges that on or about the 23rd day of April, 1936, the defendant owned certain described real estate in Hillsborough County and that prior to that plaintiff and defendant had entered into a lease of the described property which lease was then about to expire; that plaintiff and defendant then negotiated a new lease on the property to run for a period of ten years from the 24th day of December, 1936, to the 23rd day of December, 1946; then plaintiff alleged:—"that at the time said new lease was negotiated, the defendant informed plaintiff that it might become necessary at any time to dispose of said property, inasmuch as under the laws of the State of New York the defendant was prohibited from holding or acquiring this class or type of property for any considerable period of time, but that in event it did so become necessary to dispose of same, or in event the defendant desired to sell said property, plaintiff herein would be given the first opportunity to purchase same

for such price and upon such terms as the defendant had been óffered by any other purchaser, and that in the event the plaintiff did not so desire to purchase said property for such price and upon such terms and conditions, then the defendant had the right to cancel said lease, all of which will fully appear by reference to paragraph Ninth of Plaintiff's Exhibit 'A'."—and also

"That plaintiff took said premises in and by said agreement marked Exhibit 'A' and in and by the various contractual relations entered into thereby, and since said date to the present time has fully carried out all the obligations which plaintiff assumed in and by said lease and other contractual relations with defendant, and alleges that upon the date of the filing of this amended bill of complaint plaintiff has carried out each and every obligation on its part to be performed by the plaintiff.

### IV.

"Plaintiff would further aver that as a material part of the considerations to be performed by the parties to said lease, Section Nine provided among other things that 'lessee is hereby granted the option to purchase said property and premises at the price and terms named in said notice provided such option is accepted within twenty-five (25) days from the time such notice of sale is received.' That approximately two years prior to the filing of the bill of complaint herein, the plaintiff herein, desiring to make arrangements to air-condition the premises leased from the defendant; took up with the defendant the matter of extending or renewing the lease. Shortly thereafter, one W. L. Harris, of Miami, Florida, informed plaintiff herein by letter that he was authorized by the defendant to obtain the operating figures from plaintiff on the premises hereinbefore described and leased to plaintiff, a copy of such letter being attached hereto, marked Plaintiff's Exhibit 'B,' and made a part hereof by reference, and that such figures were necessary before defendant could discuss a new lease or discuss an outright sale of said property. Plaintiff would further aver that after some negotiations defendant informed Mr. Frank Rogers, President of the plaintiff corporation, that it had become

necessary and advisable to dispose of the said leased premises and that it would send out circulars advising that said property was for sale and when it had obtained the best bid therefor the said defendant would notify plaintiff of the best offer it had received, and that plaintiff would under the provisions of the agreement entered into between the parties, have the right to meet such offer and be given the first opportunity to become the purchaser of said property, if it so desired. Plaintiff would further aver that the defendant corporation not only assured the plaintiff on more than one occasion that it had the first right to purchase and would be given the opportunity to purchase in the event a suitable offer or price could be established, but the defendant also in writing notified its agent in Miami, by letter dated November 21, 1945, that the plaintiff herein had the first right to purchase the property, as will more fully appear by a copy of said letter, and especially the fifth paragraph thereof, attached hereto marked Plaintiff's Exhibit 'C' and by reference thereto made a part hereof as fully as if set out herein in haec verba. Plaintiff would further aver that the best offer the defendant received for said premises was $190,000.00 cash, and that upon being so advised it offered said amount through the agent of defendant, Mr. W. L. Harris, of Miami, but said offer was refused, even though no contract had been entered into or made at the time plaintiff made its offer, all of which will more fully appear by a copy of letter from Mr. P. V. Cloke, assistant manager of Guardian Life Insurance Company of America, to Mr. W. L. Harris dated December 7th, 1945, said copy of such letter being attached hereto, marked Plaintiff's Exhibit 'D,' and made a part hereof by reference.

VI.

"Plaintiff would further aver that in order to avoid any misunderstanding and any question that plaintiff desired to exercise its option, it notified Guardian Life Insurance Company in New York on December 12th, 1945, that plaintiff was ready, able and willing to meet the price offered by the highest and best bidder for the premises, and that the plaintiff exercised its option to do so, all of which will more fully appear by a copy of said letter dated December 12th,.

1945, attached hereto, marked plaintiff's exhibit 'E' and by reference made a part hereof; but that notwithstanding the offer made to the defendant's agent in Miami, and notwithstanding the notice given the defendant in New York, the said defendant refuses to allow the plaintiff the right to purchase said property as given it in the lease contract hereinbefore referred to, and as defendant has repeatedly advised and informed the plaintiff it would do since said written contract was executed.

### VII.

"Plaintiff would further aver that the premises hereinbefore described are so constructed and situated that they can be used only for a picture show or play house, and plaintiff herein has, over a period of years, spent considerable money both in advertising and in bringing good pictures to said theatre to build up the reputation of said show house, and that if it is deprived of the right to purchase said premises, or on the contrary said premises may be occupied and used by a rival concern, it will be irreparably injured. Plaintiff re-avers its readiness, willingness and ability to purchase said property for the sum of $190,000.00 cash, and does hereby offer to do so in event it is given the opportunity to buy same—as it should be given under the terms of the contract and the repeated agreements and assurances made by defendant to the plaintiff since said contract was executed."

The Bill prayed that,

"(1) That the Guardian Life Insurance Company of America a corporation of the State of New York, made a party defendant to this amended bill of complaint and be required to make a true, direct and perfect answer to same, but not under oath, answer under oath being hereby expressly waived;

"(2) That the defendant, Guardian Life Insurance Company of America, be ordered and directed to tender to this plaintiff the property hereinbefore described for the same purchase price which it has agreed to sell said property for to parties whose names are unknown to this plaintiff, and that plaintiff be allowed a period of ten (10) days within which to tender the said purchase price;

"(3) That upon a final hearing of this cause the Guardian Life Insurance Company of America, a New York corporation, be permanently enjoined from selling or disposing of this property, until the plaintiff shall have the right to purchase property under the terms and conditions set forth in this amended bill of complaint;

"(4) That the Guardian Life Insurance Company of America, defendant, be required to specifically perform all of the contractual relations entered into by and between the parties plaintiff and defendant concerning the property set forth and described in this amended bill of complaint; and

"(5) For such other and further relief as to the Court may seem meet and proper."

Section 9 of the lease, copy of which was attached to and by apt words made a part of the bill, was as follows:

"Ninth: In case of a bona fide offer of sale of said property, lessor has the right to cancel this lease upon giving lessee sixty (60) days notice in writing, which notice shall contain the price and terms of such sale, and by paying to lessee, upon its surrender of this lease, any balance of the credit allowed it on rent for monies expended by lessee for equipment, repairs and decorations, which has not been theretofore deducted from the regular monthly rentals; the payment or reimbursement of such unused credit to be without any calculation of interest. However, lessee is hereby granted the option to purchase said property and premises at the price and terms named in said notice provided such option is accepted within twenty-five (25) days from the time such notice of sale is received."

Exhibit 'B' attached to and made a part of the bill was as follows:

"W. L. HARRIS
749-750 Ingraham Building
Miami, 32, Florida

"Mr. Frank Rogers,                                    "May 2, 1945
% Paramount Enterprises Company,
Jacksonville, Florida.

"Dear Mr. Rogers:

"On April 26th I wired you asking if you would be kind enough to furnish me daily number of admissions and daily

amount of admissions for the past five years on the Park Theatre, Tampa, Florida.

"Perhaps you thought I was presumptuous in wiring you for this information without first sending you a copy of the letter from the Guardian Life Insurance Company and my reason for doing that was that I expected to spend the week-end in Tampa and Monday and Tuesday, which I did. I am enclosing a photostatic copy of the letters from the Guardian Life Insurance Company and I wish to repeat my request for this information.

"As a matter of fact, Mr. Rogers, when you made your first request for the renewal of the lease on the Park Theatre, which was something over a year ago, the Guardian Life Insurance Company requested me, at that time, to make a report on this theatre for them so that they might know if they were properly handling the property.

"I had never had an opportunity to make a thorough investigation and, therefore, have never made a report up until this time. I did, however, have weekly period checks made on the theatre, but realizing that there might be seasonal differences in attendance at the theatre and also realizing that the facts I had obtained from checks had been made at a time since Tampa had a good many of the armed forces and other war workers residing there, I felt that I should not make my report based entirely on the checks that I had caused to be made on the theatre, and believing that you would want a report made on the true conditions as they exist, rather than from what could be gathered in the manner that I have used, I therefore, requested this information from you.

"If you will furnish me this information, I will immediately make my report based on such facts as I found while in Tampa and what facts I had gathered from other sources in Tampa and the information furnished by you, and if you are still interested in leasing the theatre for a term of years, I think, then, we will be in a position to start negotiations. It is my opinion that these negotiations will be carried on through my office in Miami, in fact, I am sure of that.

"I understand that you are in Miami quite often, in fact, a portion of each week. I would be glad to have you drop into the office on your next visit down there and I think that I can make the situation clearer to you.

"Trusting that I am not asking any information that an owner or an owner's agent is not entitled to and assuring you that it is with the best intentions in the world that this information is requested, I am"

Exhibit 'C' attached to and made a part of the bill was as follows:

"Mr. W. L. Harris
749-750 Ingraham Building,
Miami, 32, Florida.

Re: R. E. No. 73 Park Theatre
42408 Lafayette St., Tampa, Fla.

"Dear Mr. Harris:

"Judging by your letter of November 16th, you have apparently had the same experience with Mr. Rogers which we have had—a refusal to give figures upon which to base negotiations, either for a renewal of the lease or a sale of the property. We are satisfied that a rental which has remained stationary for some twelve or thirteen years is entirely too low for the period ahead and, of course, intend to make a reasonable effort to sell the property before considering the lease, because New York Insurance law requires us to dispose of property as soon as we reasonably can.

"Without commenting upon the questions revolving about a renewal of the lease, since Mr. Rogers in his discussion with you has emphasized that he would prefer to have you first submit an offer of $150,000—cash for the property, we are at this time writing only with respect to the sale.

"Until we see sound evidence of the fact that the property is not worth our asking price of $190,000.—, there is no possibility of the Committee considering an offer of $150,-000.— or $160,000.—, regardless of the proportion of the purchase price to be paid in cash. At the moment we do not believe that a comparable theatre can be built at a price even considerably above our asking price of $190,000.—. Ad-

mittedly, it is difficult for us to state what a comparable theatre in Tampa could be built for, but we have comparatively reliable yardsticks, in the form of many inquiries concerning mortgages on theatres in many cities, and, by adjusting for differences in the cost of construction and allowing only a modest amount as value for land, we believe that our asking price is a favorable one from the point of view of a purchaser. Your comments from time to time concerning rentals would seem to substantiate our own.

"Up to the present time we have been at a disadvantage in discussing a sale of this property with anyone, except the tenant, as the preemption clause in the lease and the unexpired term of the lease have, in combination, discouraged outside prospects. We have reason to believe, however, that, with only one year, of the lease to go, we can, with some promise of a successful conclusion, offer the property to other prospects and our plans are being made accordingly.

"It would seem to be in order, therefore, for you to advise Mr. Rogers of the position we are taking and emphasize to him again that our Committee intends to hold the property for $190,000.— until such time as we are convinced that a higher or lower figure should be considered.

"The door is presently open for a frank and open approach, if the tenants are interested.

"With kindest regards,

Sincerely yours,

B. B. Pouncey
Manager
Mortgage Department."

Exhibit 'D' attached to and made a part of the Bill, was as follows:

"Mr. W. L. Harris
749-50 Ingraham Building
Miami, Florida.

"Dear Mr. Harris:

In Re: R. E. No. 73—Park Theatre, 424-28
Lafayette St., Tampa, Florida.

"This will confirm our telegram as follows: 'RE 73 Park Theatre, Tampa, your wire December 4 contract already

executed to sell this property subject to lease with Gulf Theatres, Inc..' sent to you today.

"We hope you will understand that upon receipt of your telegram of December 4th our Committee was already considering an offer of $190,000 all cash, subject to the Gulf Theatres' lease and these negotiations have been concluded on that basis.

"We very much appreciate your efforts on our behalf to procure information and to produce a purchaser for this propetry.

Very truly yours,<br>Mortgage Department<br>(Signed) P. V. Cloke<br>Assistant Manager."

Exhibit 'E' attached to and made a part of the Bill, being a letter from plaintiff to defendant, dated December 12, 1945, is in the material part as follows:

"In a telephone conversation which the writer had with your Mr. Edmonds on December 7, 1945, you advised us that you had entered into a contract of sale to sell such leased premises to a third party for the sum of $190,000.

"Your attention is called to Article NINTH of such lease. Under the provisions of such Article NINTH, we have the option to purchase such leased premises at the price and terms contained in any bona fide offer of sale of such leased premises.

"We hereby advise you that we hereby exercise our said option.

"By reason of the exercise by us of our said option, our position is that you are obligated to sell to us, and we are obligated to purchase from you, good and marketable title to such leased premises for the sum of $190,000. We stand ready, able and willing to proceed forthwith with the performance of our said obligation, and we hereby demand that you likewise proceed forthwith with the performance of your said obligation.

"We further demand that you do not go forward with the sale of such leased premises to any third party.

"Any reply that you see fit to make to this letter should be addressed to us in care of Florida State Theatres, Inc., Florida Theatre Bldg., Jacksonville, Fla."

On hearing on motion to dismiss the amended bill of complaint the Court entered its order as follows:

"This cause comes on to be heard upon the motion of the defendant to dismiss the amended bill of complaint filed herein on February 9th 1946. The answer to the question presented by the amended bill of complaint and motion depends upon the construction of Paragraph 9 of the lease appended to the amended bill of complaint and made a part thereof. The option to purchase the property described in the lease is available to the plaintiff only in the event of a sale of the property and notice of cancellation of such lease to the defendant or tenant and not otherwise. The amended bill of complaint fails to allege that the defendant or lessor has availed himself of the right to cancel the lease and given the plaintiff notice thereof, so that under the facts alleged, the amended bill of complaint is without equity.

"IT IS, THEREUPON, CONSIDERED, ADJUDGED AND ORDERED that the motion to dismiss the amended bill of complaint be and is hereby sustained, the same amended bill of complaint dismissed with prejudice and the notice of lis pendens, filed in this cause cancelled."

From this Order, plaintiff appealed.

So it is that appellant contends that it had an enforceable contract with the appellee which gave the appellant the right to have the leased property conveyed to it by appellee, if at any time during the term of the lease appellee had an offer for the purchase of the property which appellee was willing to accept and if plaintiff was then ready, willing and able to meet the price, terms and conditions of such offer for purchase.

The appellee contends that as to the so-called option agreement in the lease Section 9, supra, of the lease expressed fully, clearly and unambiguously the terms of the contract in this regard.

We find nothing in the letters from the appellee or its agent to appellant or its agent which constitutes an admission

of the terms of the option agreement being other than those expressed in Section 9 thereof.

It is a well settled legal principle that if the terms of a written contract are clear and unambiguous the contract must stand as it is written and that neither party may allege or prove that by parol agreement such terms and conditions were other than those expressed in the contract in the absence of fraud or deception. See McGhee Interests, Inc. v. Alexander National Bank, 102 Fla. 140, 135 So. 545; Peoples Savings Bank & Trust Co., v. Landstreet, 80 Fla. 853, 87 So. 227; Arnold v. First Savings & Trust Co., 104 Fla. 545, 141 So. 608; Metropolitan Casualty Insurance Co. of New York v. Curry, 156 Fla. 504, 24 So. (2nd) 316.

To hold otherwise would be to disregard the statute of frauds, Section 725.01 Fla. Statutes 1941 (same F.S.A.) and would allow a plaintiff to specifically enforce a contract to convey lands when such contract did not conform to the statute of frauds, supra. See Todd v. Hyzer, 154 Fla. 702, 18 So. (2nd) 888.

Section 9, supra, of the lease in form and in necessary legal construction constitutes an enabling clause and not a restrictive one. It confers on the lessor the right to cancel the lease which the lessor would not have without an agreement in the lease to that effect and it binds the lessor in the event it elects to cancel the lease to then give the lessee the opportunity to purchase the property at the same price and upon the same terms under which a third party is ready, willing and able to purchase the property provided the lease is cancelled. But, it confers no obligation on the part of the lessor to sell the property to the lessee under any conditions except that the lease is to be canceled. See Levy v. Peabody, et al., 138 Mass. 164, 130 N. E. 261; Devitt v. Kaufman County, 27 Tex. Civ. App. 332, 66 S.W. 224; 32 Am. Juris. 279, 35 C.J. 1046 (note 69A); Diepenbrock v. Luiz, 159 Cal. 716, 115 Pac. 743.

Under the terms of Sec. 9 of the lease the lessor reserved the right to cancel the lease only in the event of its having a bona fide offer for sale of said property and then it could only cancel the lease upon giving 60 days notice in writing to

the lessee stating in such notice the price and terms of such offer for sale and, upon that being done, the lessee was granted the option to purchase the property at the price and terms named in the notice, provided it exercised and accepted such option within 25 days from the time such notice of such sale was received. The last sentence in Sec. 9, supra, must be read and construed with the foregoing sentence in that section because the language of the last sentence specifically refers to the offer for purchase and the notice of cancellation set forth in the first sentence of that section.

There is no allegation that there was any attempt to cancel the lease. On the other hand, it appears that the contract made by appellee with a third party for the purchase and sale of the premises provided that such purchase and sale should be made subject to the terms of the lease to the appellant.

We find that the court below committed no error in dismissing the amended bill of complaint. Therefore, the decree is affirmed.

So ordered.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., concur.