PER CURIAM.
As part of negotiations leading to the increase in a debt secured by a mortgage on certain real property (which property was subject to an outstanding lease which contained within its terms an option to purchase the fee) the mortgagee, Monumental, required a deposit of certain funds to indemnify it from possible loss because of a provision in the original mortgage relating to a reduction in certain prepayment penalties upon a change of title. The understanding of parties and the establishment of the deposit or escrow is reflected in a letter agreement which reads as follows:
“The new Promissory Note in the amount of $1,250,000.00, contains a provision to the effect that in the event that Nicholas H. Morley exercises that certain Option Agreement dated the 20th day of May, 1974, the prepayment penalties pertaining to said loan will thereupon decrease.
Therefore, in consideration of the undersigned’s issuing the mortgagee title *976 policy to you, [Monumental] and as an inducement for you to enter into the Modification Agreement and accept the new Promissory Note in the sum of $1,250,000.00, as aforesaid, the undersigned does hereby irrevocably agree that upon notification from you that Nicholas H. Morley has exercised his option to purchase under the Option Agreement dated May 20, 1974 that upon your demand, the undersigned shall forthwith remit to you the sum of $10,162.00.
It is further understood that such payment to you shall be unconditional and shall not be modified, nor shall there be any reimbursement to the undersigned by you, irrespective of whether the purchase by Morley is in actuality consummated, or whether Morley chooses to prepay the principal obligation of your Promissory Note at or prior to maturity.”
Subsequent to the execution of the letter agreement and the deposit of the funds, the option to purchase was exercised by Morley’s successors. However, notwithstanding the express terms of the letter contract to the contrary, the deposit was delivered to the original mortgagor, lessor, Florida East Coast Properties, Inc. and not to the mortgagee, Monumental Life Insurance Company. Monumental then brought a lawsuit against Commonwealth Land Title Insurance Company for breach of the escrow arrangement. The trial court found the agreement to be ambiguous and accepted oral evidence, that notwithstanding the written provisions of the deposit agreement, it was conditioned on the lessee-optioned-purchaser announcing its intention as to whether or not it would prepay the underlying mortgage. This appeal ensued. We reverse.
There is no ambiguity in the agreement. It is clear in its terms that when the option was exercised, the deposit was to be paid to Monumental, the mortgagee. Any oral understanding or negotiations prior to the execution of a written agreement are merged in the written agreement. Jacksonville Paper Co. v. Smith & Winchester Mfg. Co., 147 Fla. 311, 2 So.2d 890 (1941); Carlon, Inc. v. Southland Diversified Company, 381 So.2d 291 (Fla. 4th DCA 1980); Windowmaster Corporation v. Jefferson Construction Co., 114 So.2d 626 (Fla. 3d DCA 1959). Oral testimony can only be entertained to explain an ambiguity. Gulf Theatres v. Guardian Life Insurance Company of America, 157 Fla. 428, 26 So.2d 188 (1946); Carlon, Inc. v. Southland Diversified Company, supra; Donnelly v. Marriott Corp., 266 So.2d 183 (Fla. 3d DCA 1972).
Having determined that there was no ambiguity as a matter of law, compare, Friedman v. Virginia Metal Products Corp., 56 So.2d 515 (Fla.1952); Continental Casualty Company v. Borthwick, 177 So.2d 687 (Fla. 1st DCA 1965); Atlas Sewing Center, Inc. v. Belk’s Department Store of West Palm Beach, Incorporated, 162 So.2d 274 (Fla. 2d DCA 1964); it was thereupon error for the trial court to accept oral testimony and vary the terms of the written agreement.
Therefore the final judgment under review is reversed and the cause is remanded to the trial court with directions to enter judgment for Monumental.
Reversed and remanded with directions.