HARRY GILBERT, Respondent, *v.* WILLIAM J. VAN KLEECK, as Administrator of the Estate of SAMUEL J. VAN KLEECK, Deceased, and as Administrator with the Will Annexed of JOHN D. VAN KLEECK, Deceased, et al., Defendants-Appellants, and CROSBY-MERTZ, INC., Intervener-Appellant.

Third Department, July 8, 1954.

*Samuel W. Eager, Jr.,* for intervener-appellant.

*James Abernethy* for defendants-appellants.

*John J. Egan* for respondent.

HALPERN, J.   The plaintiff entered into an agreement with Samuel J. Van Kleeck, individually and as executor of the estate of John D. Van Kleeck, on November 15, 1948, for the purchase of a parcel of real property in the business section of Kingston, New York.   There were several stores upon the premises; one, occupied as a barbershop, had been leased to one Ferrara by Van Kleeck on February 15, 1945; another, a larger store, had been leased on September 10, 1948, to a firm known as Crosby and Mertz.   Each of the leases contained an option to the lessee to purchase the entire parcel, of which the demised premises were a part, at the same price and upon the same terms as offered by any prospective purchaser whose offer the lessor was willing to accept.   The options were of the type known as a "first privilege to purchase" (*R. I. Realty Co.* v. *Terrell,* 254 N. Y. 121).   The option to Crosby and Mertz was made expressly subject to "any prior option which may exist in favor of Louis Ferrara".

The Ferrara lease read: " And it is further agreed that if said party of the first part receives an offer of purchase of property 314-324 Fair Street, and the offer results in a bona fide sale, said party of the second part will peaceably surrender said premises on sixty days written notice to surrender and quit the premises provided that said party of the second part may have the option to purchase said premises at the same price and terms as offered by the prospective purchaser."

The Crosby and Mertz lease read: " It is further agreed between the parties that if the party of the first part receives an offer for the purchase of the property known and designated as 314-324 Fair Street, which includes the demised premises, and the said offer results in a bona fide sale of the property, the parties of the second part will peaceably surrender the demised premises on six months written notice to surrender and quit the premises; this agreement, however, shall in nowise affect the original term of this lease, and any notice so served during the original term of the lease shall be ineffective to terminate the lease prior to the 15th day of March 1952; it is further understood and agreed between the parties that the parties of the second part, in the event of such offer of purchase, shall have the option to purchase the said premises at the same price and on the same terms as offered by any prospective purchaser, subject to any prior option which may exist in favor of Louis Ferrara."

The rental under the Ferrara lease was $22 per month; the term was three years, beginning July 1, 1945, with an option to renew for a further period of two years. The rental under the Crosby and Mertz lease was $175 per month; the term was three years, beginning September 15, 1948, with an option to renew for two further periods of two years each upon the same terms except that the rental was to be $190 per month.

On December 14, 1946, Ferrara sold his barbershop to one Dumenigo and leased the store to Dumenigo for the unexpired term of the original lease, at the same rental as provided in the original lease. The lease to Dumenigo provided that he had " the privilege of making such payments directly to Samuel J. Van Kleeck, the landlord of the party of the first part ". There was no express reference to the option to purchase in the Dumenigo lease but a copy of the original lease was annexed thereto and the Dumenigo lease was made " subject to all the limitations, restrictions and covenants contained " in the original lease.

On November 15, 1948, Van Kleeck executed the agreement for the sale of the property to the plaintiff, referred to above. The " binder " recited that it was " subject to present leases ".

Apart from this express provision, the purchaser was chargeable with constructive notice of the options held by the tenants, since they were in possession of the premises and their possession gave notice to the world of all their rights under the leases (*Jurgensen* v. *Morris,* 194 App. Div. 92; *Phelan* v. *Brady,* 119 N. Y. 587; *Ritz* v. *Rubin,* 201 N. Y. S. 99).

On November 23, 1948, the attorney for Van Kleeck sent letters to Ferrara and to Crosby and Mertz, notifying them of the receipt of an offer for the purchase of the premises from a prospective purchaser and requesting them to advise the writer on or before December 1, 1948, whether they were interested in exercising their respective options.

The defendant Crosby-Mertz, Inc. had succeeded to the interests of Messrs. Crosby and Mertz and, on November 29, 1948, Crosby-Mertz, Inc. notified Van Kleeck that it elected to exercise the option under its lease. In the meantime, the plaintiff, the prospective purchaser, had entered into negotiations with Ferrara, the original tenant under the lease containing the first option to purchase, for the acquisition of that option and on November 29, 1948, the plaintiff procured an assignment from Ferrara of his option to purchase, in consideration of the payment of the sum of $250. The plaintiff notified Van Kleeck on November 30, 1948, of his election to exercise the option. The next day, December 1st, the defendant Crosby-Mertz, Inc., in an effort to fortify its position, procured an assignment of the same option from Dumenigo, the tenant in possession under the Ferrara lease.

Van Kleeck decided that Crosby-Mertz, Inc. was entitled to the property and accordingly conveyed the property to it on December 13, 1948.

This action was thereupon brought to compel specific performance of the contract of purchase entered into between the plaintiff and Van Kleeck and of the option to purchase which the plaintiff held as the assignee of Ferrara. During the pendency of the action, Samuel J. Van Kleeck died and the defendants Van Kleeck were substituted as defendants in his stead.

The court below granted judgment in favor of the plaintiff. This appeal is taken from that judgment.

The first point raised upon this appeal is that the agreement between the parties was not sufficiently definite to constitute a binding contract and that the so-called " binder " was not a sufficient memorandum to comply with the Statute of Frauds. The trial court rejected these contentions and, as to this, we think it was right. The purchase price was stated in the binder

as " approximately $27,800.00 based on a payment of $6,000.00 over the balance of present mortgage, which is supposed to be $21,800.00 ". This was a sufficiently definite agreement as to the price and the binder was a sufficient memorandum of the agreement. It was clearly the intention of the parties that the purchaser was to pay the sum of $6,000 above the amount of the mortgage, whatever it might be; there was to be an upward or downward adjustment of the total price depending upon whether the mortgage was slightly more or less than the amount stated.

The real problem in this case concerns the rights of the parties under the options.

The plaintiff rests his case upon the assignment of the option contained in the Ferrara lease, as giving him a right of purchase superior to that of the defendant Crosby-Mertz. There are, in our judgment, three defects in the plaintiff's claim:

(1) The option to purchase was not assignable apart from the lease.

(2) The option had been effectively transferred by Ferrara to Dumenigo, as part of the transfer of the leasehold estate, prior to the attempted transfer of the option to the plaintiff.

(3) The second option held by the defendant Crosby-Mertz could be defeated only by a bona fide exercise of the prior option and there has been no such bona fide exercise here.

As to the first point, the question of whether an option to purchase contained in a lease is assignable apart from the lease is basically a question of the intention of the parties. It is possible to draft the provision so as to give the lessee an option to purchase as an independent contractual right, separable from the lease, but such a provision would be an unusual one. The principal purpose of a first option to purchase is to protect the lessee's interest in continued possession of the premises by assuring him of an opportunity to purchase the premises before they are sold to anyone else. A subsidiary purpose is to encourage the lessee to make improvements upon the premises which he might not otherwise make. These purposes would be defeated if the lessee, while keeping the leasehold estate, were to assign the option to a stranger. It is therefore to be inferred, in the absence of an expression of an intention of the parties to the contrary, that the option was intended to be inseparable from the leasehold estate (1 American Law of Property, § 3.82, p. 361).

There is nothing in the language of the option here involved or in the surrounding circumstances of the parties to justify taking this case out of the general rule. It is hardly to be assumed that

the lessor intended to give, in connection with the leasing of a barbershop for $22 a month, an option " in gross " to purchase the whole business block, which the lessee could sell in the open market to anyone interested in acquiring such an option, separate from the leasehold estate.

The purported assignment of the option by Ferrara to the plaintiff, not connected with a transfer of the leasehold, would therefore have been ineffective, even if Ferrara had still been in possession and had not previously transferred the leasehold estate to Dumenigo.

This brings us to the second flaw in the plaintiff's claim. Ferrara had transferred the whole of the unexpired term of his lease to Dumenigo on December 14, 1946. While the transfer was in form a sublease, it was in substance an assignment. A transfer of the entire leasehold estate, without the retention of any reversionary interest, constitutes an assignment in law even though the instrument may be drawn in the form of a sublease (*Gillette Bros.* v. *Aristocrat Restaurant,* 239 N. Y. 87; *Herzig* v. *Blumenkrohn,* 122 App. Div. 756; *New Amsterdam Cas. Co.* v. *National Union Fire Ins. Co.,* 266 N. Y. 254).

The assignment carried with it the option to purchase even though there was no express reference in the assignment to the option. An option to purchase is a covenant running with the land and the benefit of the covenant passes to an assignee of the lease without specific mention (*Garelik* v. *Rennard,* 116 Misc. 352, judgment vacated on other grounds 200 App. Div. 904; *Grosso* v. *Sporer,* 123 Misc. 796; *Walker* v. *Bradley,* 89 Misc. 516).

The trial court held that the lease to Dumenigo was a sublease in legal effect as well as in form and that therefore Dumenigo acquired no right to the option, in view of the settled rule that a sublease does not impliedly transfer to the sublessee an option to purchase contained in the original lease. We cannot accept the trial court's view. We do not believe that the differences between the provisions of Dumenigo's lease and the provisions of the original lease, which the trial court stressed, were of such a character as to affect the legal nature of the transaction. For example, Dumenigo's lease contained a covenant restricting the use of the premises to a barbershop only, whereas the original lease permitted the premises to be used " for any legitimate business " with certain enumerated exceptions. There was no provision in the lease for the enforcement of the covenant by a re-entry upon the occurrence of a breach but even if such a right of re-entry had been reserved, it would not have been sufficient to

constitute a reversionary interest in Ferrara (*Gillette Bros.* v. *Aristocrat Restaurant,* 239 N. Y. 87, *supra*). The trial court also saw significance in the fact that Dumenigo was given the right to renew the lease on sixty days' notice whereas Ferrara had the right to renew on thirty days' notice under the terms of the original lease. The original term had expired on June 30, 1948, several months before the transactions here in question, so that Dumenigo must be deemed to have been in possession under a renewal of the lease (*Long* v. *Stafford,* 103 N. Y. 274). The difference in the length of the required notice of renewal had therefore become academic. In any event, differences of this kind could not transform an assignment of the whole leasehold estate into a sublease.

As we have already indicated, the option to purchase was inseparable from the leasehold estate. The option could not be assigned separately from the estate. Neither could it be retained by the original lessee, after he had parted with the leasehold estate. It was clearly the intent of Ferrara to transfer all his interest in the leasehold estate to Dumenigo. After the making of this transfer, there was no reversionary interest left in Ferrara to which the option to purchase could adhere.

We therefore conclude that Dumenigo became the owner of the option upon the transfer of the leasehold to him. But Dumenigo, in turn, had no right to assign the option apart from the leasehold estate. The assignment by Dumenigo to Crosby-Mertz was therefore ineffective but that is of no materiality here since Crosby-Mertz had its own option to purchase and it did not have to rely upon the assignment from Dumenigo. In order to succeed, the plaintiff had to establish that he had effectively acquired an option superior to that of Crosby-Mertz. The only option to purchase which was superior to that of Crosby-Mertz was held by Dumenigo and the plaintiff could not acquire it by an assignment from Ferrara.

The plaintiff is barred from asserting a right of purchase superior to that of Crosby-Mertz for still another reason. Even if Ferrara had continued to own the option under the original lease and even if the option were one which was assignable to a third person, separate from the leasehold, the plaintiff could not claim to be a bona fide assignee of the option. The option conferred upon its holder the right to match the offer made by a prospective purchaser. The plaintiff was himself the prospective purchaser and there could not be a bona fide assignment to him of the right to supersede his own offer. The purported assignment really constituted a waiver or release of the option,

in favor of the plaintiff as the prospective purchaser. This left the second option held by Crosby-Mertz in full effect. The plaintiff could not defeat the second option by purchasing the first option and then asserting that he was exercising it by matching his own offer. If he wished to carry out his contract of purchase in priority to the rights of the option holders, he had to obtain releases from the holders of both options.

Upon entering into the contract for the purchase of the property, the plaintiff became the equitable owner of the property, subject to the possibility of being divested by the exercise of one of the options. In equity, he succeeded to the position of the lessor who had granted the options and he was bound to act in good faith with respect to them. The plaintiff was in the position of an owner of real property who had granted two successive options for the purchase of the property. The owner could not defeat the second option by taking a so-called assignment of the first one and then asserting that he had exercised the option by purchasing the property from himself.

The second option was subject to be defeated only by a bona fide exercise of the first option. A bona fide exercise meant the displacing or superseding of the offer of the prospective purchaser by the optionee's election to purchase the premises under his option. No such bona fide exercise has taken place here.

In the absence of a valid exercise of the first option, the defendant Crosby-Mertz was entitled to the property upon its exercise of the second option.

One other question remains to be considered. The trial court gave an alternative ground for its decision, which it itself recognized was inconsistent with all that had gone before. The court held that the provisions of the leases which had been treated by all concerned as options to purchase were not options at all but were merely conditions with which the lessor had to comply if he desired to cancel the leases. The court therefore held that the plaintiff had the right to enforce the purchase agreement and that no options stood in his way.

The court reached its conclusion upon the authority of the case of *Callaghan* v. *Hawkes* (121 Mass. 298; see, also, *Levy* v. *Peabody*, 238 Mass. 164). In the *Callaghan* case, the lease provided that Hawkes, the lessor, should have " the right to sell and dispose of the farm and buildings at any time covered by this lease, by giving said Callaghans [the lessees] two months' notice thereof, and also by giving them the privilege of purchasing at the same price any other person may offer ". Hawkes sold and conveyed the farm to a third person, without giving the lessees

any opportunity to purchase. In an action for damages for breach of the provision brought by the lessees, the court held that they had no cause for complaint. The court held, in effect, that the only result of the lessor's selling without giving the lessees an opportunity to purchase was that the lessor lost the right to cancel the lease. The court construed the provision, not as a covenant by the lessor in favor of the lessees giving them a first option to purchase the premises upon the receipt of any offer which the lessor was willing to accept, but merely as a condition of the exercise by the lessor of his right to cancel the lease.

The language of the leases before us is wholly different from that in the *Callaghan* case. Under the terms of the lease in the Massachusetts case, the right to purchase was to arise only if the lessor elected to serve a notice of cancellation, which was required to contain a provision giving the lessees " the privilege of purchasing." In the present case, the options to purchase were to become effective immediately upon the receipt of a purchase offer which the lessor was willing to accept.

All the parties, both by their conduct prior to the institution of this action and by their pleadings in the action, construed the provisions of the leases as covenants by the lessor giving the lessees enforcible options to purchase. The lessor, immediately upon receipt of the purchase offer from the plaintiff, wrote to the lessees, inquiring whether they wished to exercise their options. The plaintiff did not question this construction but busied himself in negotiating the purchase of the first option. The plaintiff, in his original complaint, alleged that the Ferrara lease gave the lessee " an option to purchase the premises * * * at the same price and on the same terms as should be offered by any other prospective purchaser " and, in the amended complaint, the plaintiff alleged that the lease to Crosby and Mertz gave them " an option to purchase or right of first refusal to purchase the premises * * * which said option or right of first refusal as contained in said lease was subject to the option and right of first refusal in favor of Louis Ferrara ". These allegations were admitted in the answers. The construction so agreed upon by all the parties is controlling here (*Wilson* v. *Brown,* 5 Cal. 2d 425). The suggestion of a different construction comes much too late.

Finally, it should be noted that there is a marked difference between the provisions of the Ferrara lease and those of the Crosby-Mertz lease and, if the *Callaghan* construction is to be applied at all, it should be applied to the Ferrara lease only and not to the Crosby-Mertz lease. In the Ferrara lease, the option

to purchase was stated as a proviso, in the same sentence as that in which the right to cancel the lease upon a sale of the premises was reserved in favor of the lessor. If the word " provided ", which introduces the option clause, is given its technical meaning and the clause is treated as a true proviso, there is much to be said for applying the *Callaghan* construction to that lease. On the other hand, in the Crosby-Mertz lease, while the purchase option is separated only by a semicolon from the sale clause, the purchase option constitutes an independent sentence not structurally connected with the sale clause. It begins: " it is further understood and agreed."

Furthermore, it should be noted that the sale clause in the Crosby-Mertz lease specifically provided that it could not be exercised so as to cut off any part of the initial three-year term. There was no such limitation upon the option to purchase; that was to be applicable at all times throughout the term, whenever the lessor received an offer which he was willing to accept. This fact militates strongly against the construction of the purchase option as a mere condition of the sale clause. The option must be construed as a covenant by the lessor, giving the lessee an enforcible option to purchase, regardless of whether the lessor desired to cancel the lease under the sale clause.

We are concerned at this point only with the effectiveness of the Crosby-Mertz option, since we are here considering the argument that the plaintiff's purchase agreement of itself gave him a right to purchase the property superior to that of Crosby-Mertz under its lease. Since we have found that the Crosby-Mertz lease conferred upon the lessee an enforcible option to purchase and since the plaintiff's contract was subject to the rights of Crosby-Mertz under the lease, the plaintiff's claim falls.

The judgment appealed from should be reversed on the law and the facts and the complaint dismissed, with costs. Settle form of order, including statement of findings reversed and new findings made, on notice.

Foster, P. J., Bergan, Coon and Imrie, JJ., concur.

Judgment reversed, on the law and facts, and complaint dismissed, with costs. Settle form of order, including statement of findings reversed and new findings made, on notice. [See *post,* p. 857.]