NATHAN N. CORTESE et al., Doing Business as CORTESE RESTAU-RANT, Appellants-Respondents, *v.* BEATRICE C. CONNORS, Respondent-Appellant.

NORBERT EISENSTEIN, Respondent, *v.* BEATRICE C. CONNORS, Appellant.

Third Department, December 24, 1955.

*Harry S. Travis* for appellants-respondents.

*Peter A. Daniels* and *Theodore H. Cohn* for Beatrice C. Connors, respondent-appellant and appellant.

*James B. Gitlitz* for respondent.

BERGAN, J. Plaintiffs Cortese were tenants in real property in Binghamton owned by defendant Connors. The lease gave them an option to buy. It provided that if the landlord wished to sell, the tenants should have the " first option to purchase " the property " under the terms at which it was offered for sale ". It has been found on a sufficient record that defendant informed James Cortese that the property was listed for sale at $35,000; and indicated that it might be bought for $25,000. This was communicated through an agent. Mr. Cortese stated that he would not pay more than $20,000. Defendant Connors later entered into an agreement with plaintiff Eisenstein to sell the property for $21,750. Both the plaintiffs Cortese and the plaintiff Eisenstein, respectively, seek a judgment of specific performance. After a trial the court granted judgment dismissing the complaint of the plaintiffs Cortese and granting judgment to plaintiff Eisenstein. We think the case was correctly decided.

An owner of property who has bound himself to give an option to a tenant to purchase " under the terms at which it is offered for sale " has an obligation to the tenant to allow due exercise of the option. But the tenant has an obligation, too; and the statements made by him in the interest of bargain and sale to bring the price down may be of such a character that a reasonable man would take them as indicating that the tenant elected not to exercise the option.

Neither party is quite as free in dealing with rights fixed by an option as they might be under open conditions of barter. If the tenants stated that $25,000 was too much and the landlord sold the property for a lesser amount she would no doubt be bound to keep the tenants advised of the lesser amount at which it was later offered for sale.

But if a tenant denominates a buying price of his own and states that he will not pay over that price, the landlord may be justified in believing him and selling it at a price above the

tenant's ceiling. This is not because of estoppel; it is because the landlord has performed his contract and the tenant has elected not to accept its benefits. Such an election need not necessarily be expressed in a formal document; it may be stated orally.

The judgment should be affirmed, with costs to the respective respondents.

HALPERN, J. (dissenting). The court below held that the conversation between James Cortese and Solak, the defendant's agent, in May, 1953, amounted to a waiver or abandonment of the option contained in the Cortese brothers' lease or, in the alternative, that it gave rise to an estoppel barring the subsequent exercise of the option. The opinion of the majority of this court rejects the theories of waiver and estoppel and substitutes a new ground for the decision, namely, that the conversation constituted an actual compliance with the terms of the option on the part of the landlord. This not only goes further than the trial court did but it goes further than any claim advanced by the respondents. The respondents, in their briefs upon this appeal, argue that " The proof established each of the essential elements of waiver and equitable estoppel "; they do not even contend that the landlord actually complied with the terms of the option.

I do not believe that the theories of waiver and estoppel are applicable here nor do I believe that, upon the record, it can properly be found that the landlord had performed her duty under the option.

The Cortese brothers were in possession of the premises under a lease which had four years to run in 1953. The lease contained the following provision: " The Landlord agrees that in the event of the Landlord's desire to sell the above mentioned property before the expiration of this Lease, the Tenants shall have the first option to purchase the same under the terms at which it is offered for sale ".

In May, 1953, Miss Connors placed the property in the hands of Solak, a real estate agent, for sale at $35,000. She informed Solak that the Cortese brothers had a first option to purchase and she accordingly instructed him to communicate with them first.

The trial court found that the following then occurred:

" Around the first week in May, 1953, Solak, as instructed, went to see the Cortese brothers and talked with James Cortese. He told him that he had the property listed for sale for $35,000.00, but if Cortese made an offer of $25,000.00 he thought the defendant would accept it.

" Mr. Cortese told Solak that the premises were in a run-down condition and in need of repair and were not worth $20,000.00, and that under no circumstances would he pay more than that figure; again, he stated that even at that price he was not interested in purchasing because he owned the land adjoining and if the occasion arose he could erect his own building. The substance of this conversation was communicated to the defendant by Solak.''

Thereafter, Solak advertised the property for sale and the plaintiff Eisenstein responded to the advertisement and entered into negotiations for the purchase of the property, which eventuated in an agreement, on May 27, 1953, by the defendant Connors to sell the property to Eisenstein for $21,750.

The Cortese brothers learned about the contract a few days later and they immediately commenced an action for specific performance under the option provision of their lease.

Under the terms of the lease, the landlord was bound to offer the premises to the tenants at the price at which she was willing to sell the property, before she could lawfully sell the property to anyone else. If the tenants declined to purchase at the stated price, the landlord could, within a reasonable time thereafter, seek other buyers at that price. If she was unable to find a buyer at that price and she subsequently decided to sell the property at a lower price, it was her duty to go back to the tenants and give them an opportunity to buy at the new reduced price before offering it to others at that price.

The only price at which the landlord offered to sell to the tenants was $35,000. A counteroffer in the amount of $25,000 was solicited by the defendant's agent but the tenants were under no duty to make any counteroffer. Their refusal to make the counteroffer suggested by the agent and their further statement in the course of the conversation that they would not pay even $20,000 are of no legal significance. The tenants' statement was wholly hypothetical; it was made at a time when the asking price was $35,000 and a counteroffer of $25,000 was being solicited. Such a hypothetical statement did not exhaust the tenants' option nor did it terminate their first option to purchase the property, in the event that the landlord should subsequently decide to offer the property at a sum less than $35,000. The landlord had complied with her duty under the option only with respect to the offer of the property at $35,000, and she was free, within a reasonable time thereafter, to seek other buyers at $35,000 or more, but she was not free to

seek other buyers at a lower price without first making a new offer to the tenants at the reduced price.

The tenants' statement must be considered in the light of the circumstances under which it was made. So viewed it is evident that it merely constituted buyers' bargaining talk. It was coupled with disparaging remarks about the condition of the property, the need for repairs, and the availability of an alternate site upon adjoining property. All these statements fall within the category of bargaining talk.

The tenants had the right to expect the landlord to give them a definite opportunity to buy at any reduced price at which she ultimately decided to sell. No such opportunity was given to the tenants by the landlord before she entered into the contract to sell the property to Eisenstein for $21,750.

Miss Connors' agent seems to have been under the impression, and Miss Connors seems to have derived the impression from him, that the tenants' statement that they would not pay even $20,000 authorized the landlord to proceed to sell the property to any buyer whom she could find, without reoffering the property to the tenants, so long as the sale price was in excess of $20,000. This impression, as we have seen, was erroneous as a matter of law. But, in any event, good faith required that the landlord notify the tenants that that was the interpretation which she intended to place upon the tenants' statement and thus give them an opportunity to clear up the misapprehension. No such notice was given to the tenants.

A landlord ought not to be allowed to escape easily from the obligation of a solemnly granted written option. He should not be allowed to pick out of a conversation a casual statement made by the tenant in the course of argument, that he would not even pay a given price, which was far below the price at which the property was then being offered by the landlord, and treat that statement as authorizing him to sell the property to others at the price mentioned by the tenant without any further notice to the tenant. The argumentative statement by the tenant is obviously not entitled to the same legal effect as an offer by the landlord to sell at the price mentioned and a rejection of the offer by the tenant. A first option to purchase in a lease is a very valuable right, which may be as important as, if not more important than, the terms of the leasehold itself. We ought not to adopt a rule of law which would allow such an option to be lightly overturned upon the basis of a single sentence culled out of a long conversation between the landlord's real estate agent and the tenant.

A first option to purchase property held under a lease is not a new device in the commercial world. It has a well-settled meaning and it has been uniformly enforced by the courts as requiring a definite offer by the landlord to the tenant and a rejection by the tenant of that offer, as a condition precedent to the landlord's acquiring the right to sell to others at the stated price. Indeed, it has been uniformly held in this State that under a so-called "first option to purchase", which is stated in the lease in those terms, without any qualifying or explanatory provision, the landlord may not call upon the tenant to make an election as to whether to exercise the option or to forego it, unless and until the landlord has a bona fide offer from a third person for the purchase of the premises at a price which the landlord is willing to accept (*Jurgensen* v. *Morris,* 194 App. Div. 92; *Sargent* v. *Vought,* 194 App. Div. 807; cf. *Bullock* v. *Cutting,* 155 App. Div. 825, and *Gilbert* v. *Van Kleeck,* 284 App. Div. 611).

In this case, the tenants' option is not stated as a simple "first option to purchase" but is stated as an option to purchase the property "under the terms at which it is offered for sale". Because of these additional words, I believe that the landlord had the right in this case to reverse the chronology of events and, after deciding upon the price at which she was willing to sell, to put the tenants to their option to purchase, by offering the property to them at that price, without first having a bona fide offer from a third person. Under that construction, upon the tenants' refusal to buy at the offered price, the landlord had a reasonable time in which to seek a buyer at that price. If it were not for the added words, then, under the cases cited, the landlord in this case would not even have had the right to sell to others at $35,000, after she had offered the property to the tenants at that price, because at the time of the offer to the tenants she had no bona fide offer from a third person, which the tenants could be called upon to match. I have given the option clause an interpretation more favorable to the landlord because of the addition of the quoted words. This enabled the landlord to list the property with a broker and to seek buyers generally at the given price for a reasonable time after the tenants' refusal to purchase at that price. I cite the cases making the existence of a bona fide offer from a third person a condition precedent to the landlord's requiring the tenant to accept or reject a specific offer, as indicating the strictness with which the courts have enforced the terms of a first option to purchase given to a tenant. But even under the liberal interpretation of the option given above, it seems clear to me on this record that the landlord had failed to perform her obligation under the option.

In my opinion, the judgment appealed from should be reversed and judgment should be directed in favor of the plaintiffs Nathan and James Cortese for specific performance of their option.

COON and ZELLER, JJ., concur with BERGAN, J.; HALPERN, J., dissents in an opinion, in which FOSTER, P. J., concurs.

Judgment affirmed, with costs to the respective respondents.