**ZEPHYR COVE ⹁ODGE, INC., a corporation, Plaintiff-Appellant,**

v.

**The FIRST NATIONAL BANK OF NEVADA, as Administrator with Will Annexed of the Estate of George Whittell, Jr., Defendant-Appellee.**

No. 71–1059.

United States Court of Appeals,
Ninth Circuit.

April 27, 1973.

Rehearing Denied July 5, 1973.

---

Morton Galane (argued), Las Vegas, Nev., Robert F. List, Carson City, Nev., for plaintiff-appellant.

Casey W. Vlautin (argued), Virgil Wedge, Woodburn, Forman, Wedge, Blakey, Folsom & Hug, Reno, Nev., for defendant-appellee.

Before ELY and HUFSTEDLER, Circuit Judges, and CRARY,* District Judge.

CRARY, District Judge:

The within appeal is from a summary judgment entered in favor of Appellee Bank as Administrator with Will Annexed of the Estate of George Whittell, Jr.

The case involves a suit by Zephyr Cove Lodge, Inc., a corporation, the assignee of the lessee Gene F. Empey, who is the sole stockholder and president of Zephyr Cove Lodge, Inc., against George Whittell, Jr., lessor, on the jurisdictional basis as provided in Title 28, United States Code § 1332. The issues presented center on the provisions of paragraph 4 of the lease, namely:

"4. The Lessees agree that in the event the Lessor makes a bona fide sale of Zephyr Cove Beach at any time during the term of this lease, the Lessor shall then have the right to cancel this lease without penalty on six (6) months' notice in writing to the Lessees, but in such case the Lessor shall remunerate the Lessees for the unamortized cost of improvements which the Lessees have made on the premises, evidenced by receipted bills. In the event the Lessor does have a bona fide offer of sale, the Lessees will be given the first opportunity to purchase at the same terms and conditions of said offer."

Leases on the Zephyr Cove property in which Empey, with others, had been lessees, contained the same provisions.

The property leased was known as the Zephyr Cove Beach, a resort consisting of 196.4 acres in Nevada with approximately 1400 feet of shoreline on Lake Tahoe. The lease was not recorded. This tract was a part of some 24,000 acres of Nevada land owned by Whittell which was the subject of the sale negotiations involved herein. The Zephyr Cove lease, executed on October 16, 1958, was between Whittell, as lessor, and Robert L. McDonald and Empey, as lessees. It was for the term January 1, 1959, to December 31, 1964. McDonald assigned his interest in the lease to Empey on June 2, 1959.

It is the position of the appellant, as stated by Empey, that it was the obligation of the lessor, under the provisions of paragraph 4 of the lease, to notify the lessee of any offer, if the lessor felt the price was satisfactory although the lessor also felt that a particular term or condition should be changed, and to give a right of first refusal at that price, or any adjusted price that the lessor considered satisfactory. The appellee contends that the lessor must propose to sell the property and terminate the lease to actuate the right of first refusal.

The crux of the case is whether the sentence calling for the right of first refusal is to be interpreted as an independent, free-floating provision unaffected by the first sentence of paragraph 4 of the lease, which concerned cancellation thereof on six months notice in case of a bona fide sale of Zephyr Cove Beach.

Mr. John S. Lewis, Jr., a real estate operator representing Whittell, opened negotiations in late October, 1962, with Joseph I. O'Neill, Jr., through a real estate broker, Charles G. Johnston, for the sale of the 24,000 acres of Whittell's Nevada property.

There was some misunderstanding on the part of Johnston as to when the Zephyr Cove lease terminated under the provisions thereof. He first advised O'Neill that it expired in 1962 and, as late as May 28, 1963, he stated that Whittell had guaranteed there was no

---

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

lease on any of the properties that extended beyond 1963.

On June 3, 1963, Whittell and O'Neill signed an option agreement which gave O'Neill the option of purchasing the property in some fifteen parcels as detailed in the agreement. The option provided, among other things, that there was no lease on any of the properties " * * * covered by this option and agreement to purchase * * * " beyond December, 1963, " * * * excluding Zephyr Cove lease which runs to December 31, 1964." This option authorized the purchase of the property in fifteen parcels within one year from notice of exercise of the option, or over a period of four years following notice by O'Neill to the bank of exercise of the option, which he was required to do within 180 days from June 3rd, the date thereof, all as detailed in paragraphs B1 and 2 of the agreement. The Zephyr Cove property was parcel No. 14 as listed in the option.

On June 6, 1963, newspapers in Nevada and California carried announcements of O'Neill having contracted to buy Whittell's Tahoe land. Lewis, Sr., Whittell's lawyer, in his deposition taken July 1–2, 1969, said that he learned on or about June 6, 1963, of the first refusal clause in the Zephyr Cove lease and a letter dated June 17, 1963, from Johnston to O'Neill, received by O'Neill on June 18th, clearly indicated that they knew of the lease option at that time.

On June 20, 1963, Lewis, Sr., wrote to Johnston that he, Lewis, Sr., had interpreted the lease clause " * * * to mean that if the lease terminated on six months notice, Empey would have the right to buy at the same price it was offered to the other party. However, the lease will not be terminated and the construction of the provision would be in some doubt."

O'Neill's lawyer advised him that the lease gave Empey a right of first refusal in event of a bona fide sale and that as long as the lease was in force O'Neill should take only an option on the property. On August 13, 1963, Whittell and O'Neill executed a modification of the option and agreement to purchase to provide that upon receipt by the bank " * * * of the sum of $2,800,000 on January 15, 1965, the bank shall release the deed covering parcel 14."

On November 13, 1963, Lewis, Sr., advised Empey's attorney, who had made inquiry as to any sale of the property, that no sale of the Zephyr Cove property, which was in Douglas County, would take place until after the Washoe County and Ormsby County parcels were sold and that Empey's lease was in no danger as the group agreed to purchase the property in Washoe and Ormsby Counties over a period of approximately five years.

On November 11, 1963, Whittell extended the June 3rd option to March 3, 1964.

The State of Nevada had indicated a desire to purchase a portion of Whittell's land here involved, and in December, 1963, the appraisals by the State of Nevada were completed and the appraised value was $5,000,000 rather than the $18,000,000 expected. This resulted in renewed negotiations and a tentative sale price, submitted by Whittell on or about March 24, 1964, of $11,000,000 with a lease of the Zephyr Cove property for $100,000 per year from January 1, 1965, to December 31, 1969, with the option to purchase the Cove property for $2,500,000. O'Neill, through Johnston, indicated to Whittell by telegram on March 30, 1964, that Whittell's offer of March 24th was acceptable "in principal." Whittell, however, refused to sign the sale documents and on April 27, 1964, told O'Neill that the sale was off.

O'Neill thereafter sued Whittell for the property and after trial in the United States District Court it was adjudged that there was no binding contract since there was an abandonment or mutual recision of the option.

Exhaustive discovery was had before the appellees' motion for summary judgment was heard. All negotiations concerning possible sale of the Nevada property as a whole and the Zephyr Cove

property separately were covered in detail, as disclosed in the hundreds of pages of depositions and documents set forth in the record on appeal and as disclosed in the briefs of the parties. The appellant does not contend that there is additional evidence to be produced at trial but that he should be allowed to argue certain portions, disclosed in the record, to the jury.

The history of paragraph 4 of the lease, supra, and its appearance in prior leases of the property is covered in the discovery but there is no evidence of negotiations between the lessor and lessees as to the interpretations of the parties of the right to first refusal provision at the time paragraph 4 was first included in a lease on the Zephyr Cove property nor at the time of the execution of the lease here involved on October 16, 1958, for the period from January 1, 1959, to December 31, 1964.

The District Court, in a twenty-two page Order granting the appellee's motion for summary judgment, details the facts and law to be applied as to both the case at bench and the companion consolidated case, Zephyr Cove Lodge, Inc., a corporation, v. RKO General, Inc., a corporation, and Joseph I. O'Neill, Jr., No. 71–1006. A separate per curiam opinion has been filed in that case.

■ In considering the propriety of the summary judgment herein, we of course, must view the evidence most favorable to the appellant. Having in mind that the issue is the interpretation of the provisions of paragraph 4 of the lease, any evidence of intent expressed orally between the lessor and the lessee or lessees should be considered, particularly for the purpose of ascertaining whether there be a material issue of fact to be determined.

The record does not disclose nor do the parties in their briefs point to any negotiations or communications between the parties to the lease involved, or as to a prior lease, which would indicate, or from which a trier of the facts might determine, what the parties intended by the provisions of paragraph 4 of the lease at the time it was entered into or to support appellant's theory that the first refusal clause was to be deemed a provision to be exercised independent of the sale and cancellation provisions in paragraph 4. The opinions of O'Neill, his counsel and his realtor, Johnston, are not controlling.

It is uncontroverted (1) that there was no sale of the Zephyr Cove property, (2) the lease was not terminated by Whittell, and (3) the lessee was in undisturbed possession of Zephyr Cove until the lease expired on December 31, 1964.

*Discussion of Applicable Law*

The authorities disclose that there are two general classes of first refusal clauses to be found in leases. Sometimes leases give the lessee an *independent enforceable right* to buy the property during the term of the lease on the same terms and conditions which the owner had decided to accept from a third person making an offer in good faith. On the other hand, some leases make the right of first refusal a part of a provision which reserves to the lessor the right to cancel the lease in the event he decides to sell the premises.

■ We conclude the lease in the instant case is of the second class, that the right to first refusal in the second sentence of paragraph 4 of the lease is not an independent right but that the first sentence of the paragraph and provision for cancellation therein must be read and considered as a part of and a condition to the first refusal right. The cancellation provision of paragraph 4 is for the benefit of the lessor, in that he has the authority to sell the property free of the lease, whereas the first right of refusal protects the lessee's tenancy by giving him the right to buy the property to prevent cancellation of his lease by sale.

Both parties discuss Callaghan v. Hawkes, 121 Mass. 298 (1876). In that case, the lease gave Hawkes, the lessor,

the right to sell the property by giving the lessees two months notice thereof and also by giving them the right to purchase at the agreed price of sale. The lessees also had the right, in the event of sale, to take off the crops.

Hawkes sold the property, subject to the lease, and the lessees continued in possession to the end of the lease period. The Court held that the right of refusal did not come into effect since the lease was not cancelled, observing:

"The clause in question, in form and necessary legal construction, is enabling and not restrictive, and confers upon the lessor a right which he would not otherwise have had. Independently of, and notwithstanding this clause, he may sell the reversion. The whole effect of the clause was to enable him to terminate the lease, and sell the whole estate, first giving the lessees the opportunity of purchasing. This construction is fortified by the final clause, which allows to the lessees, in case of sale, the privilege of taking off the crops."

To the same effect, Gulf Theatres v. Guardian Life Ins. Co., 157 Fla. 428, 26 So.2d 188 (1946), and Signal Oil Co. v. Republic Investment Co., 11 Wash.2d 325, 118 P.2d 957 at 959 (1941).

Superior Portland Cement v. Pacific Coast Cement, 33 Wash.2d 169, 205 P.2d 597 (1949), relied on by appellant, distinguishes the Signal Oil Company case, supra, wherein the Court said, as to a first refusal clause like that in the instant case:

"'Cases holding that, where an option has been inserted in the lease giving the lessee the right to purchase, but containing no provision with reference to the surrender of the premises during the term of the lease, the option is enforcible, have no application to the situation presented in this case.

"'The superior court correctly construed the lease as covering only a sale that would disturb the possession.'" [Pages 615–616.]

Appellant's reliance on Wilson v. Brown, 5 Cal.2d 425, 55 P.2d 485 (1936), and Moreno v. Blinn, 81 Cal. App.2d 852, 185 P.2d 332 (1947), does not appear to be justified.

In the *Wilson* case, the lease provided:

"'The lessors hereby reserve the right to sell the property at any time, and in case of sale, preference to purchase said property shall be given to said lessees.' This same paragraph of the lease contained the provision that, in the event the lessees should not exercise said preference, they agreed to sell and convey their interest in the service station fixtures to the said lessors, or any person they might designate, at the then market value." [Pages 485–486.]

The entire tract, of which the leased property was a part, *was sold* without giving the lessees the right to purchase the leased property. The purchaser contended that the right of first refusal was conditioned on termination of the lease. The Court disagreed, stating that the lessors had treated the provision as an independent right and not conditioned on termination of the lease. [Page 486.] The Browns, lessors, had told the purchaser, Baker, that he would have to see the Wilsons and Baker saw them and offered them the leased property. [Page 486.] There was conflicting evidence as to whether the lessees said they did not want to buy all of the leased premises and this point was resolved in favor of the lessees.

The Court ruled that the lessors had never treated the right of the lessees to purchase as conditioned on the termination of the lease by sale of the property.

In the *Moreno* case, supra, the lessor, Blinn, leased thirty acres to Moreno for a period of six years. The lessor had "permission to sell said property, but giving tenant first right to purchase." [185 P.2d at page 333.] The lease also provided that the lessee had the right to remove improvements on expiration of the lease. There was no provision for

termination of the lease on sale of the property. In February, 1943, Blinn sold seven of the thirty acres, after Moreno approved the sale and quitclaimed the seven acres sold. Blinn sold to Garcia the remainder of the thirty acres by straight deed, not subject to Moreno's lease, in October, 1943. Garcia was aware of the terms of the lease. In February, 1944, Moreno offered to purchase the property for the price sold to Garcia. In the meantime, he had paid rent to Garcia. Blinn contended that Moreno's right to purchase was conditioned on the lessor's desire to sell and terminate the lease. The Court said the lease was recorded shortly after it was made and that it was not necessary to give the respondent an option to buy in order to protect his rights for the term of the lease. Holding that first refusal was an independent right, the Court states:

"The language used would indicate that he (Moreno) was given an unlimited right to purchase the property if the lessor decided to sell. Not only is this a reasonable interpretation, but it is supported by the acts and conduct of the parties.

\* \* \* \* \* \*

"A further consideration is that when the Blinns sold to the Garcias their deed was not made subject to the respondent's lease. \* \* \* The lessor attempted to sell without a reservation as to the lease rights, and, under any view, the right to exercise the option came into existence." [Page 334.]

Appellant also relies on Gilbert v. Van Kleeck, 284 App.Div. 611, 132 N.Y.S.2d 580 (1954). That case concerned leases of two separate stores upon a portion of the premises involved. One was occupied as a barber shop and was leased to Mr. Ferrara by Van Kleeck on February 15, 1945. The other store was leased to a firm, Crosby and Mertz, later Crosby-Mertz, Inc. Each lease gave an option to the lessee to purchase the entire parcel of which the leased premises were a part on the same terms as offered to any prospective purchaser whose offer the lessor was willing to accept, with the further provision to sell and cancel the lease in the event of a bona fide sale of the property.

Following receipt of Van Kleeck's letter notifying Ferrara and Crosby and Mertz of impending sale of the property to Gilbert and offering the premises to the lessees on like terms, Crosby-Mertz, Inc., exercised the option to purchase and the property was sold to it.

Gilbert, plaintiff in the lower court, who became the assignee of the *option to purchase* under the Ferrara lease, sued for specific performance of the contract to purchase between himself and Van Kleeck and of the option to purchase he held as assignee of Ferrara. The appellate division ruled that the purchaser, Gilbert, could not defeat the second option to Crosby and Mertz by purchasing the first option to purchase and then asserting he was exercising the first option " \* \* \* by matching his own offer."

The Court considered the contention that the options to purchase were merely conditions with which the lessor must comply if he desired to cancel the lease. After discussing Callaghan v. Hawkes, supra, the Court observes that all the parties, by their conduct prior to suit and by their pleadings in the case, construed the provisions of the lease as giving the lessees enforceable options to purchase without regard to the provisions for cancellation of the leases. The lessor, Van Kleeck, wrote to the lessees inquiring as to their wishes to purchase the property upon receipt of the purchase offer from plaintiff. Gilbert, in his complaint and amended complaint, alleged his right to purchase the premises under the first refusal rights as set forth in the two leases, referred to above, and these allegations were admitted in the answers. The Court said:

"The construction so agreed upon by all the parties is controlling here." [Page 589.]

Obviously, the Court, in its ruling, relied on the clearly defined conduct of the

parties which evidenced the intent that the option of the lessees to purchase was a right independent of any provision for surrender of the leased premises following sale of the property. We do not have a comparable situation at bench. Here, as soon as the provisions of paragraph 4 came to the attention of the parties, every effort was made to preserve the lessee's rights under the lease. Whittell is not to be faulted for doing what was required to avoid the necessity of offering the Zephyr Cove property for sale to the lessee.

We conclude that the right of the appellant to purchase the Zephyr Cove property under the conditions of paragraph 4 of the lease did not accrue. The summary judgment dismissing the action as to the appellee herein is Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. In doing so, I first emphasize the requirement that all reasonable intendments touching upon the existence of a genuine issue of material fact must be indulged against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed. 2d 176 (1962); Griffeth v. Utah Power & Light Co., 226 F.2d 661 (9th Cir. 1955). This traditional and necessarily rigid requirement stems from recognition that summary judgment is an extremely drastic remedy. 3 Barron & Holtzoff, Federal Practice and Procedure § 1231 (Wright ed.), quoted in Hoffman v. Babbitt Bros. Trading Co., 203 F.2d 636, 637 n. 1 (9th Cir. 1953). Accordingly, summary judgment should be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genu-

ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). *See* Consolidated Electric Co. v. United States, 355 F.2d 437 (9th Cir. 1966).

From the voluminous discovery records and briefs in this case, and from the unambiguous provisions of the first-refusal clause of the contract, I simply cannot agree that the negotiations entered into between Whittell and O'Neill failed to raise a genuine issue of fact concerning Zephyr Cove's right to purchase the property that it had leased and improved.

Paragraph 4 of the lease agreement expressly provides that "[i]n the event the Lessor does have a bona fide offer of sale, the Lessees [1] will be given the first opportunity to purchase at the same terms and conditions of said offer." The majority, however, refuses to read this provision independently of the first sentence of paragraph 4, which provides for cancellation of the lease on six months notice of a bona fide sale of Zephyr Cove Beach. Thus the majority concludes that appellant's right of first refusal was conditioned upon the lessor's decision to sell the property accompanied by an actual termination of the lease.

To justify this conclusion in a summary judgment context, the movant (appellee) had the initial and heavy burden of demonstrating the absence of any genuine issue of material fact so that, under applicable principles of substantive law, it was entitled to judgment as a matter of law.[2] The several cases examined by the majority do not, however, satisfy me that appellee was entitled to judgment as matter of law. To the contrary, as the majority notes, the "authorities disclose that there are two general classes

1. The lease in question was originally taken by two individuals. The appellant corporation was subsequently created and the lease cosigned to it.

2. Sartor v. Arkansas Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 1593 (1944) (movant has the burden of showing that "it is quite clear what the truth is" thereby excluding any real doubt as to the existence of a genuine issue of material fact); 6 J. Moore, Federal Practice ¶ 56.15 [3], at 2335 (2d ed. 1973) ("The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts").

of first refusal clauses to be found in leases." Similarly, in the cited cases the factual issues, including those involving the intent of the parties, were fully tried, producing varying conclusions concerning the right of first refusal.

Further, as the majority also expressly recognizes, "[t]he crux of the case is whether the sentence calling for the right of first refusal is to be interpreted as an independent, free-floating provision unaffected by the first sentence of paragraph 4. . . ." As I perceive this critical factual issue, the relationship between these two key sentences cannot be divined solely from within the four corners of the contract. To go beyond the borders of the contract, however, would necessitate inquiry into the intentions of the parties; and, as the majority admits, there was nothing presented that fully elucidated those intentions.[3] Absent a plenary trial, such was impossible. Moreover, the movant (appellee) conceded that "construction of the [first refusal] provision would be in some doubt" even if the lease were not terminated prior to a proposed sale. In consequence, I can find no basis for the majority's implied conclusion that the movant met its prima facie burden of dispelling the existence of triable issues.

Even if we were to assume arguendo that appellee, as the movant, has met his prima facie burden of dispelling the existence of a triable issue, I believe that in considering all the evidence in a light most favorable to appellant it is indisputable that Zephyr Cove has presented a genuine issue of material fact as the traditional test of which has hitherto been understood. *See, e. g.,* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Northrop Architectural Systems v. Lupton Mfg. Co., 437 F.2d 889, 891 (9th Cir. 1970).

The deposition of Lewis, Jr. (counsel for Whittell), reveals, for example, that Lewis, Jr., told Whittell that Whittell could not sell the beach property directly to O'Neill because the first refusal clause was supposed to operate in Zephyr Cove's favor. The majority ascribes some importance to a letter from Lewis, Sr. (also counsel for Whittell) suggesting that Lewis, Sr. interpreted the subject clauses of the lease "to mean that if the lease terminated on six months notice, Empey [appellant's predecessor] would have a right to buy. . . ." Appellant, however, adequately met this averment by pointing out that in writing this letter "Lewis, Sr. was representing Whittell's interest in retaining the [O'Neill] deposit [on the Zephyr Cove Beach property] and, therefore, proposed an admittedly doubtful defense against possible enforcement of the right of first refusal." Construing this conflicting evidence, as we must, in the light most favorable to the party opposing summary judgment, appellant's interpretation should prevail.

In addition, Whittell testified upon deposition that since he and O'Neill felt (in 1963) that Empey had the right to buy the property and that Whittell was without a right to sell it without consulting Empey, they had left Zephyr Cove out of the description.

---

3. The majority writes: "The record does not disclose nor do the parties in their briefs point to any negotiations or communications between the parties to the lease involved, or as to a prior lease, which would indicate, or from which a trier of the facts might determine, what the parties intended by the provisions of paragraph 4." I disagree, believing that the record carries us further. The material presented by the appellee, with some inferences that might be reasonably drawn from it, would have adequately supported a factual determination that the parties to the contract did in fact intend that the second sentence of paragraph 4 be literally applied. After all, the appellee intended to, and did, make substantial improvements on the leased property. It is altogether possible, if not probable, that it intended to protect itself against any divestiture of its property which might result from Whittell's exercising the unrestricted power to convey the whole property to a third person.

Finally, Whittell's failure to contradict the written assertion that appellant had "a prior right of purchase on the same terms and conditions involved in a contemplated sale to anyone else" leads to a reasonable inference, at least for purposes of determining summary judgment, that the assertion was admitted. *See* Megarry Brothers, Inc. v. United States, 404 F.2d 479 (8th Cir. 1968); Rumble v. United States, 143 F. 772 (9th Cir. 1906); C. McCormick, Law of Evidence 531-32 (1954) ("failure to reply to a letter, containing statements which it would be natural under all the circumstances for the addressee to deny if he believed them untrue, is receivable as evidence of an admission by silence").

The majority appears to believe, erroneously, that the appellant carried the burden, not only in resisting the motion for summary judgment, but also in demonstrating the merits of its claim in this court. This is not right. While it recognizes that there had been received no evidence adequate to allow for the determination of the intent of the parties in respect to paragraph 4, the majority nevertheless underscores the absence of evidence sufficient "to support appellant's theory." Similarly, the majority concludes that "Whittell is not to be faulted for doing what was required to avoid the necessity of offering the Zephyr Cove property for sale to the lessee." Whittell, however, must be faulted if, as appellant maintains, he breached the lease agreement. Appellant's only burden in this respect was to raise a triable issue, and that burden arose only if appellee, as the movant, first made the prima facie showing that "it is quite clear what the truth is." *See* note 1 *supra.*

I am thus bewildered by the majority's willingness to affirm summary judgment despite the movant's failure to meet his prima facie burden. I am equally confounded by my colleagues' readiness to make factual determinations essential to the interpretation of the contract, especially in the presence of conflicting averments and in the acknowledged absence of adequate information as to intent. By allowing the movant to meet his burden by merely offering the motion, and by requiring the appellant, at the same time, to set forth far more than "specific facts showing that there is a genuine issue for trial," the majority's decision compels the party responding to the motion to shoulder the additional burden of convincing the court that he should prevail on the merits. I respectfully submit that this turns the summary judgment procedure on its head; consequently, I would reverse.